# EXHIBIT 9

```
                                                              Page 1

 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   Case No. 20-22476-rdd

 4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

 5   In the Matter of:

 6

 7   FRONTIER COMMUNICATIONS CORPORATION,

 8

 9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

11

12                    United States Bankruptcy Court

13                    300 Quarropas Street, Room 248

14                    White Plains, NY 10601

15

16                    June 15, 2021

17                    10:05 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN
```

```
 1   A P P E A R A N C E S :

 2

 3   AKERMAN LLP

 4        Attorney for Reorganized Debtors in Copyright Claims

 5        1251 Avenue of the Americas

 6        New York, NY 11205

 7

 8   BY:  RUBEN CASTILLO (TELEPHONICALLY)

 9

10   STERN & EISLER

11        Attorney for Capitol Records, LLC,

12        UMG Recordings, Inc

13        11 8th Ave # 16F, New York, NY 10036

14

15   BY:  MICHAEL LUSKIN (TELEPHONICALLY)

16

17   CULPEPPER IP

18        Attorney for Bad house Studios, LLC

19        75-170 Hualalai Rd, Suite B204

20        Kailua-Kona, HI 96740

21

22   BY:  KERRY STEVEN CULPEPPER (TELEPHONICALLY)

23

24

25
```

```
 1   KIRKLAND & ELLIS LLP
 2        Attorneys for Reorganized Debtors
 3        601 Lexington Avenue
 4        New York, NY 10022
 5
 6   BY:   JOSHUA ROBINSON (TELEPHONICALLY)
 7
 8   ALSO PRESENT TELEPHONICALLY:
 9   MATTHEW OPPENHEIM
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 16

1  THE COURT: All right. That was my understanding.
2  And that's before Judge Torres, I think, right?
3  MR. OPPENHEIM: I believe that that's correct,
4  Your Honor.
5  THE COURT: Okay, thank you. You can go ahead,
6  Mr. Robinson.
7  MR. ROBINSON: Okay. So we were on June 8th, the
8  filing of the District Court action. On June 9th, Mr.
9  Oppenheim filed a motion to withdraw the reference at Docket
10 No. 1898 on behalf of UMG and Capitol Records and, you know,
11 the other claimants that had filed proofs of claim. On that
12 same day, that was when McGraw Hill withdrew their claim
13 with prejudice.
14 I think that's the summary other than, you know,
15 last night, Mr. Culpepper filed his invoice.
16 THE COURT: And so, is the -- has the motion to
17 withdraw the reference been assigned to a district judge
18 yet?
19 MR. LUSKIN: Your Honor, Michael Luskin of Luskin,
20 Stern & Eisler. It has not. We had filed a civil cover
21 sheet that checked the related box for the motion to
22 withdraw as being related to the District Court action, and
23 we are awaiting the judge's determination on whether it is
24 related; and if not, to which judge it would be assigned.
25 THE COURT: Okay, thanks. All right. So I have

1  reviewed the Debtors' omnibus objection, which also included
2  their proposed schedule for resolving the claims.  I've
3  reviewed the claims, and also reviewed the responses to the
4  objection by both sets of claimants, which also go into
5  scheduling points.
6  		I gather from what you just went through, Mr.
7  Robinson, that there's really no further agreement on
8  scheduling.  I will note that the claimants contemplate a
9  different scheduling approach, not only from the Debtors but
10 also from each other.
11 		And I appreciate that with the pending motion to
12 withdraw the reference, we may not be able to get very much
13 done today.  But I have one caveat to that, which is that
14 the -- what I'll refer to as the Culpepper claimants have
15 contemplated a period before litigation that could involve
16 or would involve mediation.
17 		Now, as you stated, Mr. Robinson, there had been
18 some attempt to resolve these claims, although it seems to
19 me that largely, that was based on -- that was referencing
20 an attempt to simply arrange for as much consensual
21 discovery as could be agreed and not really much of a focus
22 on the merits in terms of settlement, but maybe I'm wrong
23 about that.
24 		Anyway, where I'm going is that I did want to get
25 a better sense as to whether the parties are willing,

Page 18

1   perhaps in the context of some agreed consensual discovery,
2   to at least contemplate mediation pending a full litigation
3   approach.  The types of discovery in a full litigation
4   approach are outlined in the, what I'll refer to as the
5   Oppenheim claimants pleadings, both the motion to withdraw
6   the reference and the response to the claim objection.
7         And it does appear to me that that type of
8   discovery may well be warranted -- I'm not going to decide
9   that today obviously and may well be lengthy and may well be
10  expensive.  So I did want to explore today the parties'
11  willingness to at least consider a more structured approach
12  to resolving these matters without going down that road,
13  unless of course, the mediation approach doesn't work.  And
14  it's clear to me that the mediation approach would require
15  some information sharing for sure so that people could
16  negotiate on an informed basis.
17        So I'm throwing that out there, but I'm happy to
18  hear from the parties on any point that they think is
19  worthwhile discussing in this conference.
20        MR. LUSKIN:  Your Honor, Michael Luskin for the
21  copyright claimants, what you referred to as the Oppenheim
22  parties --
23        THE COURT:  Right.
24        MR. LUSKIN:  -- UMG, Sony, Warner Group.  We have,
25  as recently as last week, suggested mediation.  We are open

Page 19

1  to mediation.  We are open to agreed-upon discovery in
2  connection with that, obviously more limited than what would
3  be involved if we were to go to Federal Rules of discovery
4  and a cleaner reaction in the District Court.  We are happy
5  to have the discovery supervised by either, you know, a
6  mediation, which I think would make the most sense, or the
7  County if need be, but we are completely open to that and
8  really we haven't gotten anywhere with it, so that's where
9  we are.  Thank you.
10              THE COURT:  Okay.  All right.
11              MR. CASTILLO:  Judge Drain, this is Ruben
12  Castillo.  Thank you for letting me appear pro hac vice.
13              THE COURT:  Sure.
14              MR. CASTILLO:  We will certainly take your
15  comments back to Frontier in terms of mediation, but I have
16  to tell you that Frontier is not that interested in
17  mediation.  One of the problems is that the claimants
18  believe that liability is really driven by the amount of
19  copyright violation notices that are present in this case,
20  and there is a fundamental disagreement between the parties
21  on the relevance of those copyright violation notices.
22              But from the plaintiff's point of view, they drive
23  up their settlement demands in this case to make this a bet
24  your company case, and that makes mediation very difficult
25  and a monetary settlement very difficult for Frontier.

Page 20

1    So I don't want the County to believe that
2    Frontier has a big interest in mediation.  What we are
3    interested in is an adjudication.
4              THE COURT:  Okay.  Well, I think it should be
5    discussed.  To me -- how can I put this -- with the right
6    mediator, the fact that there are significant differences
7    between the parties regarding both the merits and the
8    potential amount of liability shouldn't be a bar to the
9    parties' ability to settle it on a reasonable basis.
10             I obviously, you know, have encountered mediators
11   who just, you know, look at the bottom line, and even if the
12   risk is, you know, 15-20 percent, weigh the bottom line on
13   liability enormously.  But the great thing about mediation
14   is no one has to agree at the end of the day, so I think it
15   probably does make a lot of sense to do that and to at
16   least, I would recommend, leave up to the mediator what sort
17   of information would be provided first to let a mediation
18   happen on a reasonably informed basis.
19             Obviously, the choice of a mediator is critical
20   here.  To my mind, it wouldn't be the typical bankruptcy
21   case mediator, you know, not a bankruptcy judge necessarily,
22   but someone that is familiar with these types of issues
23   pertaining to these types of claims and the defenses to
24   them, so I would urge the parties to consider that.
25             I'm saying this in part because there is some --

Veritext Legal Solutions
212-267-6868            www.veritext.com            516-608-2400

Page 21

1   there's going to be some lag here, I think, in the case
2   anyway because of the motion to withdraw the reference.
3   I've reviewed it and given the pendency of the District
4   Court action -- I'm happy to hear from the parties on this,
5   but I'm not inclined to rush into a formal discovery
6   schedule.
7           This is a core matter, I think, but no court wants
8   to have two separate litigation processes going at the same
9   time with the risk of inconsistent rulings on discovery,
10  timing on discovery, and ultimately potentially rulings on
11  the merits.  So it would seem to me that any judge presiding
12  over that possibility would at least want the parties to
13  move ahead as productively as they can before then, which I
14  think probably involves some further voluntary discovery.
15          But to my mind, it's probably most efficient to do
16  that in the context of a mediation, but the parties need to
17  discuss that, need to discuss who the mediator would be.
18  For a case like this, I'm assuming it wouldn't be the type
19  of mediator that just tells each side you're going to lose
20  and you're going to lose big and, you know, spend all your
21  money; that it would be someone who would be a little more
22  nuanced than that or a lot more nuanced than that.
23          And if you all can agree on someone like that,
24  then I think you might well be, you know, serving your
25  clients to go down that road.

Page 22

1         MR. CASTILLO:  Judge Drain, we agree that this is

2 a core matter, we want to proceed before you, and we've

3 agreed on a briefing schedule to resolve the motion to

4 withdraw.  The motion will be fully briefed by July 1st,

5 just so you know.

6         THE COURT:  Okay.  All right.  So Judge Torres

7 would then -- well, it depends whether she believes it's

8 related or not.  It could be decided by one of the judges

9 here, of course, if it's determined that it's not related.

10         So I guess we should, as a scheduling matter,

11 schedule a true pretrial conference sometime towards the end

12 of July/beginning of August is my sense, and that would give

13 the parties a month or so to focus on the mediation

14 alternative.

15         I'm not directing it to mediation; I'm just

16 suggesting it, particularly since you're probably going to

17 have a lag time anyway.  And the Debtors and I think the

18 claimants have both said that they're prepared to provide a

19 fair amount of voluntary discovery, which at a minimum, can

20 be discussed and provided in the interim.  But I think it

21 should be, you know, both sides should be doing that, not

22 just one.

23         Also, I think I did hear Mr. Robinson say you have

24 a reference to Rule 2004 discovery, given the fact that

25 these are now contested matters.  Any formal discovery would

Page 23

1  be under the (sound glitch) rules as incorporated by Rule
2  9014, not under Rule 2004, if it stayed in front of me,
3  which I don't think should be a surprise to anyone at this
4  point.
5             Okay, so I've been doing most of the talking.  You
6  know, if someone has a different direction that they want to
7  raise or a different approach, certainly feel free to do it.
8             MR. ROBINSON:  Your Honor, Josh Robinson of
9  Kirkland & Ellis, again on behalf of the reorganized
10 debtors.  You know, I'll echo what Mr. Castillo said.  I
11 mean, we can go to our client and see if there's an
12 appetite.
13            I think the main issue for us, you know, just
14 procedurally is that we have a group of claimants that is a
15 party to this District Court litigation and a group that's
16 not.  So from our perspective, we kind of just at a
17 fundamental level need to know who's in that and who's out.
18            THE COURT:  Right.  Well, you're right that the
19 Culpepper claimants filed a statement of joinder.  So Mr.
20 Culpepper, does that mean that you would be looking to
21 withdraw the reference with regard to the objections to your
22 clients' claims too?
23            MR. CULPEPPER:  Good morning, Your Honor.  Yes, we
24 support the motion to withdraw the reference by the
25 Oppenheim Group.  I would like to clarify the summary of the

1   events that Mr. Robinson gave.
2           THE COURT:  I'm sorry.  Let me just make sure I
3   have the answer to my question though.  It's one thing to
4   support their request to withdraw the reference for the
5   objections to their claims.  Are you looking to withdraw the
6   reference to your clients' claims also to the claim
7   objection?
8           MR. CULPEPPER:  No.  We are expressing our support
9   for their motion to withdraw the reference.  And if they --
10  if this County is inclined or the District Court is inclined
11  to grant that motion, we'd be willing to go to the District
12  Court to have our claims resolved there so that it wouldn't
13  be two different courts dealing with this issue.
14          THE COURT:  Okay, all right.  So that's a fair
15  answer, but I think the last part of it is the most
16  important one, which is as the Debtors' counsel stated, it
17  doesn't make sense to have -- if the district judge decides
18  to do this, the reference withdrawn as to some of these
19  claim objections and not all of them.
20          So I think you and the Debtors' counsel should be
21  discussing a mechanism whereby if, in fact, the reference is
22  withdrawn as to the Oppenheim claims, that your clients --
23  that the objections to your clients' claims would also go
24  there, because there's really no procedural vehicle right
25  now for that to happen.

Page 25

1               MR. CULPEPPER:  I understand, Your Honor.
2               THE COURT:  Okay.  Then you were going to say
3    something before we -- just clarify that point.
4               MR. CULPEPPER:  I was just going to clarify that
5    we -- what was characterized as informal discovery, on our
6    end, we received no discovery from Frontier until after the
7    omnibus objection was made in May, so I was not in a
8    position to evaluate what Frontier had sent to the Oppenheim
9    group until recently, and that is why the statement in
10   support was just filed yesterday.
11              THE COURT:  That's fine.  My impression was that
12   the litigation schedule was probably too accelerated given
13   all the facts here.  On the other hand, if the parties can
14   agree on the scope of voluntary production, I don't see why
15   they shouldn't, particularly if they're looking to do that
16   in the context of preparing for a mediation, but frankly, in
17   any context.
18              Okay.  So look, I don't want to get tangled up in
19   the matters before Judge Torres, so I won't say anything
20   more about the fact that you have only sort of half a loaf
21   as far as the motion to withdraw the reference as far as
22   these claims, but it's something the parties should be
23   focusing on, and I'm sure he will in front of her if she
24   takes that motion or in front of one if the district judges
25   in this courthouse who would I think get it if she decided

1    that it was not related to the litigation in front of her.
2              And I will tell you the judges in this courthouse
3    rule quickly, so I think you could probably keep to that
4    schedule.  They're really great in that regard.
5              Okay.  Anything else?
6              MR. CULPEPPER:  Your Honor, should we set a
7    pretrial date, you'd said first week of August, or should we
8    take that up with chambers?
9              THE COURT:  Why don't you speak -- well, not in
10   front of me, but you should speak to Ms. Lee who keeps my
11   calendar, and she can give you a date in late July or
12   probably more likely early August for a pretrial.
13             And then for that date, obviously, I'm assuming a
14   fair amount will have happened between now and then.  You'll
15   have a much better sense of what discovery you still need if
16   it hasn't been provided on an informal basis.  And we'll be
17   discussing a discovery schedule, but I really would want the
18   parties to have discussed in advance and hopefully narrow
19   down any disputes over in advance of that conference, so you
20   can get that date from her.
21             MR. CULPEPPER:  Thank you.
22             THE COURT:  Okay, thanks very much.  Anything
23   else?  I don't think there's anything else for Frontier,
24   right, Mr. Robinson?
25             MR. ROBINSON:  No, Your Honor.  Those are the only

```
                                                        Page 27
 1   two items on the agenda today.
 2             THE COURT:  Okay.  Thank you, all.
 3             MR. ROBINSON:  Thank you, Judge.
 4             (Whereupon these proceedings were concluded at
 5   10:36 AM)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 28

1        C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature: Sonya L. Ledanski Hyde]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  June 16, 2021