# EXHIBIT 11

**Subject:** Re: Response
**Date:** Monday, May 24, 2021 at 4:06:45 PM Eastern Daylight Time
**From:** ruben.castillo@akerman.com
**To:** Lucy Noyola
**CC:** Matt Oppenheim, KOwens@foxrothschild.com

Dear Lucy
 Frontier will agree to have one client representative per existing claim review the
Highly Confidential information. We request
Similar treatment for Frontier's Associate
Counsel Paul Garcia. Frontier will not agree
To have non-claimants review the Highly
Confidential information.
  We will review any addendum you propose
In accord with this email.

       Rubén

Sent from my iPhone


> On May 24, 2021, at 1:54 PM, Lucy Noyola <Lucy@oandzlaw.com> wrote:
>
>
> [External to Akerman]
>
> Hello, Ruben,
>
> Following up on our PO request, below are the names and job titles of our client representatives seeking permission to view information designated as Highly Confidential under the protective order:
>
> > Alasdair Mullan – Executive Vice President, Head of Litigation, Business and Legal Affairs, Universal Music Group
> > Carla Miller – Senior Vice President, Business & Legal Affairs, Universal Music Group
> > David Jacoby – Senior Vice President, Head of U.S. Litigation, Business & Legal Affairs, Sony Music Entertainment
> > Wade Leak – Senior Vice President, Deputy General Counsel and Chief Compliance, Ethics and Privacy Officer, Sony Music Entertainment
> > Brad Cohen – Senior Vice President & Head of Litigation, Warner Music Group
> > Paul Robinson – Executive Vice President & General Counsel, Warner Music Group
> > Thomas Monahan – Associate Counsel, Litigation, Warner Music Group
> > Suzanne L. Telsey – Associate General Counsel, McGraw Hill
>
> Can we agree on a simple addendum allowing individuals as identified by the parties access to information designated as Highly Confidential?
>
> Best regards,

Lucy Grace D. Noyola
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW | Fifth Floor
Washington, DC 20016
202.499.2940 (direct) | 202.480.2999 (main)
lucy@oandzlaw.com | www.oandzlaw.com

---

**From:** Lucy Noyola <Lucy@oandzlaw.com>
**Date:** Thursday, May 20, 2021 at 5:43 PM
**To:** ruben.castillo@akerman.com <ruben.castillo@akerman.com>
**Cc:** Matt Oppenheim <Matt@oandzlaw.com>, kowens@foxrothschild.com <KOwens@foxrothschild.com>
**Subject:** Re: Response

Ruben,

You were not present during the parties' discussions of their respective information requests, and you apparently are misinformed as to the bargain reached by the parties. We have held up our end of the bargain. Your assertions that we promised more than what we produced is ill-founded.

We, along with your co-counsel at Kirkland and Wiley Rein, conferred by phone on March 17 and agreed that the informal information exchange was limited to the purpose of determining whether Frontier would get the benefit of a DMCA safe harbor. The intent was not to have a broad exchange on all issues. Our requests were narrowly drafted with that purpose in mind, and Frontier raised no issues with our requests, much less none of the objections that have been made as of late.

With respect to Frontier's requests, we did not agree to produce everything Frontier requested. Nor did we agree to produce "all evidence" of Frontier's infringement. Instead, we raised questions and objections to several of Frontier's requests. We also told your co-counsel that we would produce exemplars of the evidence packages and invited them to follow up if further explanation or testimony was needed. No one expressed issues with that approach. If and when we litigate the claims, you will, of course, see all our evidence of infringement. But, again, as your co-counsel agreed, the purpose of the informal information exchange was not to assess our infringement claim, but to assess Frontier's eligibility for a DMCA safe harbor.

Your characterization of Frontier's production is puzzling and inconsistent with what Frontier actually produced. You say you produced Frontier's policies, but nowhere in Frontier's letter production of April 22 or data production on May 17 is there a copy of a policy. You say you produced information about terminations under such policies, but your May 17 letter expressly states that the file you produced does not reflect terminations. You say you produced all notice data responsive to our requests. But why is there no notice data before September 2, 2019? Does Frontier have pre-September 2019 data? Or are you withholding data simply due to a formatting issue?

We have not refused to engage in discussions regarding the adjudication schedule. I understand Matt asked if Frontier would consent to litigate our clients' claims in district court. As your email

does not refer to that request, please tell us whether Frontier consents.

We will follow up shortly with the names and job titles of our client representatives seeking permission to view information protected under the protective order.

Best regards,


Lucy Grace D. Noyola
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW | Fifth Floor
Washington, DC 20016
202.499.2940 (direct) | 202.480.2999 (main)
lucy@oandzlaw.com | www.oandzlaw.com

---

**From:** ruben.castillo@akerman.com <ruben.castillo@akerman.com>
**Date:** Thursday, May 20, 2021 at 9:39 AM
**To:** Lucy Noyola <Lucy@oandzlaw.com>
**Cc:** Matt Oppenheim <Matt@oandzlaw.com>, kowens@foxrothschild.com <kowens@foxrothschild.com>
**Subject:** Response


Lucy:

We disagree with your assertions.

Initially, your clients are the claimants and bear the burden of proof. Nonetheless, you provided only a small handful of "exemplars" of supposed copyright violations on April 22, 2021, which do not establish a viable claim of infringement.  Your production was not consistent with your promise to produce on that date, and you have not supplemented it.  When will you follow through and produce all evidence of alleged copyright infringement, as well as information in response to our remaining informal requests?

Despite the shortcomings in your clients' production, Frontier upheld its end

of the bargain and voluntarily provided a large volume of information responsive to your informal requests consistent with Frontier's representations and commitments to you throughout this process. In our production on May 17, 2021, for example, we provided over 160 MB of data. You could not possibly have even begun to evaluate that information before you complained in an email the following day. The substantial information Frontier voluntarily produced, moreover, does not impact whether your clients have a valid claim of copyright infringement in the first instance, which makes your criticisms of Frontier's production particularly misplaced.

In response to all three of your requests, we provided non-privileged information in Frontier's possession about Frontier's policies and its implementation of those policies, including information about terminations under such policies. We went beyond what you requested and produced a large volume of raw data in Frontier's possession as Frontier maintains it in the ordinary course of business. Specifically, Frontier provided a large data file with all notices received from September 2, 2019, through May 11, 2021, emails Frontier sent to customers in response that Frontier maintained, and "walled garden" activity. We have explained at length and repeatedly that the format in which you request the data is simply not how Frontier maintains such data in the ordinary course of business, and Frontier is not under any obligation to produce information that it does not have, or in any other format not required under the Federal or Bankruptcy Rules, let alone as part of this informal process. We have provided all data that is maintained and preserved in the ordinary course of business relating to notices of alleged infringement that Frontier maintained.

To the extent your clients believe they need additional information in connection with these claims, Frontier has proposed in the Adjudication Schedule attached to Frontier's Objection a window for reasonable, narrowly-tailored fact and expert discovery, during which your clients will have the opportunity to obtain such information, including a privilege log. Frontier has no obligation to provide you a privilege log in connection with a voluntary production of information outside the ordinary course of litigation in response to informal information requests, and will not do so here.

To date, you have repeatedly refused to engage in any discussion regarding the Adjudication Schedule. We again stress our desire to reach a mutually agreeable schedule for resolving these claims, and welcome any input you

might have.  As is evident, we intend to proceed in the Bankruptcy Court, which is where your clients filed their claim.  We also remain open and willing to hear any suggestions you might have to narrow or resolve disputes.  Are you willing to discuss the Adjudication Schedule?  If you are, we will make ourselves available.  But we will not engage in further discussion at this time about our fulsome and voluntary production.

Finally, please let us know the name and job title of the person you wish to share the data with, and we will raise the issue with our client as to whether it is amenable to allow such person to review the data.  If we are able to come to an agreement, which would also allow for our client representative to have access to your clients' productions, it may require modification of the Protective Order.

Regards,

Rubén Castillo


vCard | Profile



CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.