LUSKIN, STERN & EISLER LLP
Michael Luskin
Stephan E. Hornung
50 Main Street
White Plains, New York 10606
(212) 597-8200

OPPENHEIM + ZEBRAK, LLP
Matthew J. Oppenheim
Lucy Grace D. Noyola (admitted *pro hac vice*)
4350 Wisconsin Avenue, NW, Fifth Floor
Washington, DC 20016
(202) 480-2999

*Counsel for the Copyright Claimants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UMG RECORDINGS, INC., et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. Case No. 1:21-cv-05253-AT ) Civ. Case No. 1:21-cv-05050-AT (Related) |
| FRONTIER COMMUNICATIONS CORPORATION, | ) ) ) |
| Defendant. | ) ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE COPYRIGHT**
**<u>CLAIMANTS' MOTION TO WITHDRAW THE REFERENCE</u>**

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.       WITHDRAWAL IS MANDATORY BECAUSE ADJUDICATION OF THE
         COPYRIGHT CLAIMS WILL REQUIRE SUBSTANTIAL AND MATERIAL
         CONSIDERATION OF FEDERAL COPYRIGHT LAW ................................. 2

II.      PERMISSIVE WITHDRAWAL IS APPROPRIATE ........................................ 5

         A.      Adjudicating the Copyright Claims and the District Court Action Together
                 Would Promote Judicial Efficiency ................................................... 6

                 1.      The Only Way to Eliminate Multiple Proceedings Is for the
                         District Court to Withdraw the Reference .................................. 6

                 2.      The Copyright Claimants Did Not Voluntarily Submit to the
                         Bankruptcy Court's Jurisdiction ................................................ 8

                 3.      The Bankruptcy Court Is Not the Best Forum to Adjudicate the
                         Copyright Claims ..................................................................... 9

         B.      Adjudicating the Copyright Claims Is Not Core to This Bankruptcy ................ 11

         C.      The Copyright Claimants Are Not Engaged in Forum Shopping ........................ 12

         D.      Frontier Does Not Address the Copyright Claimants' Right to a Jury Trial ........ 13

         E.      Frontier's Remaining Arguments Are Without Merit ......................................... 13

III.     THE MOTION IS TIMELY ............................................................................ 14

CONCLUSION......................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*BWP Media USA Inc. v. Polyvore, Inc.*,
    922 F.3d 42 (2d Cir. 2019) ............................................................. 3

*Capitol Records, LLC v. Vimeo, LLC*,
    826 F.3d 78 (2d Cir. 2016) ............................................................. 3

*Davis v. Mahlmann*,
    No. 92 C 322, 1993 U.S. Dist. LEXIS 98 (N.D. Ill. Jan. 7, 1993) ......................................... 15

*Enron Corp. v. J.P. Morgan Sec., Inc.* (*In re Enron Corp.*),
    388 B.R. 131 (S.D.N.Y. 2008) ............................................................. 5

*Flo & Eddie, Inc. v. Pandora Media, Inc.*,
    No. CV 14-7648 PSG, 2020 WL 6336124 (C.D. Cal. Oct. 22, 2020) ...................................... 3

*In re Ditech Holding Corp.*,
    No. 19-10412 (JLG), 2020 WL 3967897 (Bankr. S.D.N.Y. July 11, 2020) ........................... 4

*In re Glob. Aviation Holdings Inc.*,
    496 B.R. 284 (E.D.N.Y. 2013) ............................................................. 4

*In re Joe's Friendly Serv. & Son Inc.*,
    No. 17-MC-0190 (JS), 2019 U.S. Dist. LEXIS 204355 (E.D.N.Y. Nov. 25, 2019) .............. 15

*In re Patient Educ. Media, Inc.*,
    210 B.R. 237 (Bankr. S.D.N.Y. 1997) ............................................................. 4

*In re Pruitt*,
    910 F.2d 1160 (3d Cir. 1990) ............................................................. 14

*John Hine Studios, Inc. v. Wasserman* (*In re Merryweather Imps., Inc.*),
    179 B.R. 61 (D. Md. 1995) ............................................................. 4

*Lone Star Indus. v. Rankin Cnty. Econ. Dev. Dist.* (*In re N.Y. Trap Rock Corp.*),
    158 B.R. 574 (S.D.N.Y. 1993) ............................................................. 14, 15

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012) ............................................................. 7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................. 3

*Mishkin v. Ageloff* (*In re Adler, Coleman Clearing Corp.*),
    270 B.R. 562 (S.D.N.Y. 2001) ............................................................. 5

*Mishkin v. Ageloff*,
    220 B.R. 784 (S.D.N.Y. 1998) ............................................................. 4-5

*SNMP Rsch. Int'l, Inc. v. Nortel Networks, Inc.* (*In re Nortel Networks, Inc.*),
   539 B.R. 704 (D. Del. 2015) ................................................................ 4

**Statutes and Rules**

17 U.S.C. § 512 ................................................................................ 2, 3

17 U.S.C. § 1401 ................................................................................ 3

28 U.S.C. § 157 ................................................................................ 6, 14

Fed. R. Bankr. P. 2004 ........................................................................ 12

Fed. R. Bankr. P. 3001(f) .................................................................... 14

Fed R. Civ. P. 30(b)(6) ....................................................................... 10

The Copyright Claimants, by and through their undersigned counsel, submit this reply in further support of their Motion to Withdraw the Reference (the "Motion").[1]

## PRELIMINARY STATEMENT

Only the District Court is competent to adjudicate *all* of the Copyright Claimants' claims against Frontier because the Bankruptcy Court has no jurisdiction over the Post-Effective Date Copyright Claims.  Frontier does not—and cannot—dispute this fact.  Nor can Frontier dispute that a single unified proceeding would promote judicial economy and avoid inconsistent rulings.  Frontier acknowledges the inefficiencies of proceeding in two different courts on the same claims for different periods of time, yet it refuses to accept that withdrawal of the reference is the obvious solution.  Frontier would prefer to proceed piecemeal in the Bankruptcy Court *and* the District Court, hoping that this Court will subsequently stay the Post-Effective Date Copyright Claims.  Frontier offers no legal basis for the attempted stay nor an explanation of how a stay would avoid two different proceedings.  A stay would simply delay one of them.

Frontier is solely to blame for these multiple proceedings.  The Copyright Claimants attempted to engage with Frontier in a process to resolve all of their disputes.  Despite their good-faith efforts, the Copyright Claimants were compelled to file the Copyright Claims and the District Court Action due to: (1) Frontier's continued failure to take action against known, repeat infringing subscribers; (2) Frontier's failure to produce documents it had agreed to produce as part of informal discovery efforts; (3) the requirement of and deadline for filing administrative proofs of claims under Frontier's Reorganization Plan; and (4) Frontier's refusal to engage in mediation with the Copyright Claimants.

---

[1] All defined terms used but not defined herein have the meanings given to them in the Memorandum of Law in Support of the Copyright Claimants' Motion to Withdraw the Reference ("Mem.") [ECF No. 4].

This case meets the standards for mandatory withdrawal of the reference because resolution of the Copyright Claims requires substantial and material consideration of complex issues arising under federal copyright law.  Frontier identifies no precedent in this Circuit that has addressed, for example, the safe harbor under § 512(a) of the Digital Millennium Copyright Act ("DMCA"), which Frontier has asserted as a defense, or the merits of a claim under the Classics Act, which the Copyright Claimants are asserting.

Frontier's arguments against permissive withdrawal also fail.  Frontier offers no real solution to the inevitable inefficiencies caused by duplicative proceedings, the need for extensive fact and expert discovery in both cases or the Copyright Claimants' entitlement to a jury trial on their Post-Effective Date Copyright Claims.  Further, the fact that the Copyright Claimants filed their Administrative Claims under compulsion of the Administrative Claims Bar Date does not constitute a voluntary submission to the Bankruptcy Court's jurisdiction.  Moreover, adjudicating the Copyright Claims is not core to the Debtors' bankruptcy cases, and there is no evidence of forum shopping.  For these reasons, the Court should grant the Copyright Claimants' Motion in connection with their Copyright Claims.

## <u>ARGUMENT</u>

I. **WITHDRAWAL IS MANDATORY BECAUSE ADJUDICATION OF THE COPYRIGHT CLAIMS WILL REQUIRE SUBSTANTIAL AND MATERIAL CONSIDERATION OF FEDERAL COPYRIGHT LAW**

The Copyright Claims require substantial and material consideration of complex issues under the Copyright Act, including claims and defenses under the DMCA and the newly-enacted Classics Act.  They do not call for the mere routine application of federal copyright law; they require consideration of matters of first impression in this Circuit.  As Frontier acknowledges, "where matters of first impression are involved, . . . the burden of establishing a right to mandatory withdrawal is more easily met."  [ECF No. 8 ("Opp'n"), ¶ 31.]

First, Frontier seeks the benefit of one of four safe harbors under the DMCA, 17 U.S.C. § 512(a), which is available under certain circumstances to an internet service provider engaged in "transitory digital network communications."  (Universal Claim Objection ¶¶ 22–24.)  To qualify for this safe harbor, Frontier must establish, *inter alia*, that it has "adopted and reasonably implemented, and informs subscribers . . . of, a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers." 17 U.S.C. § 512(i)(1)(A).

The Copyright Claimants are not aware of **any** caselaw in the Second Circuit addressing, much less interpreting, the DMCA statutory provisions invoked by Frontier.  Frontier cites two DMCA cases as purported precedent (Opp'n ¶ 44), but those cases address a different safe harbor under the DMCA that is not at issue here.  *See BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 54 (2d Cir. 2019) (safe harbor under § 512(c) for "information residing on systems or networks at [the] direction of users"); *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 81–83 (2d Cir. 2016) (same).

Second, Frontier does not dispute that no court has considered an infringement claim under the newly-enacted Classics Act, 17 U.S.C. § 1401.  The single case Frontier does cite concerns its retroactive application.  (Opp'n ¶ 45 (citing *Flo & Eddie, Inc. v. Pandora Media, Inc.*, No. CV 14-7648 PSG (GJSx), 2020 WL 6336124, at *6–7 (C.D. Cal. Oct. 22, 2020).)

Also, the Copyright Claimants' claims for contributory infringement and vicarious liability are complex common-law claims not codified in the Copyright Act.  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).  Courts in this district have considered such claims before, but never against a high-speed internet service provider.  Given the technology involved in identifying infringement on P2P networks and sending infringement

notices under the DMCA, a court undoubtedly will need to resolve both legal and factual issues that are novel and complex.  (*Compare, e.g.*, Universal Claim Objection ¶¶ 17–21, *with* Oppenheim Supp. Decl., Ex. 8, at 11–15.)

Given their novelty and complexity, the issues implicated by the Copyright Claims are outside the typical purview of the Bankruptcy Court's expertise and are far from the run-of-the-mill copyright issues in the cases cited by Frontier.  (Opp'n ¶¶ 38–39 (citing *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2020 WL 3967897, at *8 (Bankr. S.D.N.Y. July 11, 2020) (addressing whether a person's name was copyrightable); *In re Glob. Aviation Holdings Inc.*, 496 B.R. 284, 285–86 (E.D.N.Y. 2013) (analyzing whether debtor reproduced the designs and created derivative works of copyrighted passenger safety information card or purchased safety card containing copyrighted material and benefited from unlawful use of copyrighted design); *SNMP Rsch. Int'l, Inc. v. Nortel Networks, Inc.* (*In re Nortel Networks, Inc.*), 539 B.R. 704, 708–09 (D. Del. 2015) (determining whether work at issue was derivative or infringing and calculating damages); *John Hine Studios, Inc. v. Wasserman* (*In re Merryweather Imps., Inc.*), 179 B.R. 61, 63 (D. Md. 1995) (resolving copyright issue in a single paragraph by citation to clear precedent); *In re Patient Educ. Media, Inc.*, 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997) (considering assignment of nonexclusive license without copyright owner's consent)).)  Notably, the "overwhelming majority" of the authorities Frontier cites on copyright issues (Opp'n ¶¶ 38–39) were decided by Article III courts, not bankruptcy courts—a factor supporting mandatory withdrawal.  *See Mishkin v. Ageloff*, 220 B.R. 784, 798–99 (S.D.N.Y. 1998) (granting mandatory withdrawal where the asserted claims and supporting theories were complex, and noting that "the overwhelming majority of cases cited by the [non-moving party regarding the underlying claims]

were decided by Article III courts"); *Enron Corp. v. J.P. Morgan Sec., Inc.* (*In re Enron Corp.*), 388 B.R. 131, 140 & n.65 (S.D.N.Y. 2008) (same).

There is also no good reason to bifurcate adjudication of the myriad issues raised by the Copyright Claims. Bifurcation would only increase the judicial inefficiencies. Moreover, the issues Frontier proposes to have the Bankruptcy Court decide are arbitrary and are not unique to the Copyright Claims. Frontier had previously agreed that its eligibility for protection under the DMCA safe harbor was a threshold issue and that informal discovery would be limited to that single, dispositive issue. (Oppenheim Supp. Decl. ¶ 8.) Without explanation, Frontier now argues that the issues of direct infringement or the extent of infringement should be adjudicated first. (Opp'n ¶ 40.) But no matter how Frontier slices and dices the claims, all of these issues require resolution of and implicate federal copyright laws. Unlike the cases cited by Frontier (*id.* ¶¶ 38–39), the Bankruptcy Court cannot adjudicate the claims without reaching difficult and complex federal copyright issues or encroaching upon the Copyright Claimants' right to a jury trial. *See Mishkin v. Ageloff* (*In re Adler, Coleman Clearing Corp.*), 270 B.R. 562, 565 (S.D.N.Y. 2001) (denying mandatory withdrawal where bankruptcy court could decide "dispositive pre-trial motions not requiring a trial by jury"); *In re Enron Corp.*, 388 B.R. at 141–42 (denying mandatory withdrawal where bankruptcy court could decide certain issues "without having to reach the Securities Act issue"). Further, Frontier's bifurcation proposal will ensure that there are more proceedings (not fewer) and that litigation takes more time (not less).

## II.   PERMISSIVE WITHDRAWAL IS APPROPRIATE

As the Copyright Claimants established in their opening brief, if the Court determines that mandatory withdrawal is not required, the Court should nonetheless find that cause exists to withdraw the reference because the *Orion* Factors favor having these copyright claims tried in a single forum. (Mem. at 17–23.) Nothing in Frontier's opposition disturbs this conclusion.

A.    **Adjudicating the Copyright Claims and the District Court Action Together Would Promote Judicial Efficiency**

1.    **The Only Way to Eliminate Multiple Proceedings Is for the District Court to Withdraw the Reference**

If this Court does not withdraw the reference, multiple proceedings on virtually identical claims are inevitable.  Frontier does not dispute that the Bankruptcy Court lacks jurisdiction to hear the Post-Effective Date Copyright Claims or that the District Court Action will proceed in the District Court no matter how this Motion is decided.  As the only court that can adjudicate the Post-Effective Date Copyright Claims, this Court is uniquely situated to hear all claims at the same time, and it should exercise its discretion to do so here.

Faced with the fact that this Court is the only venue for the Post-Effective Date Copyright Claims, Frontier seeks to have a ***subset*** of the claims adjudicated in the Bankruptcy Court.

First, Frontier argues that, absent a motion, the Bankruptcy Court must adjudicate certain unrelated claims filed by third-party movie studios (the "Movie Claimants") alleging $12 million in pre-petition damages (the "Movie Claims").  (Opp'n ¶ 53.)  At the June 15, 2021 status conference before the Bankruptcy Court, Judge Drain directed counsel for the Debtors and the Movie Claimants to discuss "a mechanism whereby if . . . the reference is withdrawn as to the [Copyright Claims], . . . that the objections to [the Movie Claims] would also go there." (Oppenheim Supp. Decl., Ex. 9, 24:20–24.)  Counsel for the Movie Claimants offered to stipulate to the District Court's adjudication of their claims if the Motion were granted, but Frontier rejected that offer.  (*Id.*, Ex. 10, at 5, Ex. 1.)

The Movie Claimants have now moved to withdraw the reference.  *Id.*  But, even if they had not, the District Court could withdraw the reference "on its own motion" so long as it finds that "cause" exists.  28 U.S.C. § 157(d).  Circumstances have changed dramatically since the Movie Claimants contacted Frontier in May 2021 regarding the Bankruptcy Court's adjudication

of the Movie Claims.  (Opp'n ¶ 10.)  Since then, the Copyright Claimants filed the

Administrative Claims, the District Court Action, and the Motion, and the Movie Claimants filed

additional post-petition claims.

In any event, withdrawal of the reference with respect to the Copyright Claims should not

depend on withdrawal of the reference with respect to the Movie Claims.  Even if those claims

remain in the Bankruptcy Court, withdrawing the reference with respect to the Copyright Claims

would still be the most efficient course of action because it would ensure that a single court

decides all of the Copyright Claimants' claims.

Second, in an attempt to address the inefficiency of multiple proceedings, Frontier

contends that, if the Court denies this Motion, Frontier will seek a stay of the District Court

Action (which Frontier apparently presumes will be granted).  (Opp'n ¶ 56.)  However, Frontier

makes no attempt to satisfy its substantial burden to obtain a stay.  Nor could it.  To obtain a

stay, courts in this Circuit generally consider the following factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil
> litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the
> private interests of and burden on the defendants; (3) the interests of the courts;
> (4) the interests of persons not parties to the civil litigation; and (5) the public
> interest.

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 n.13 (2d Cir. 2012).

Here, the prejudice to the Copyright Claimants would be manifest because a stay could

result in a de facto adjudication of the District Court Action—which appears to be Frontier's

goal (Opp'n ¶ 57)—and impair the Copyright Claimants' constitutional right to a jury trial.  On

the other hand, allowing both the District Court Action and the Copyright Claims to proceed

before this Court would not prejudice Frontier.  A stay would not eliminate or reduce the number

of proceedings; rather, a stay would ensure that the District Court Action is prolonged, perhaps

for several years.  Further, a ruling in the Bankruptcy Court would also be subject to review by

this Court—the very venue in which all of the Copyright Claimants' claims can be litigated. Frontier's request that the Copyright Claimants agree to "stay the District Court [Action]" is nothing more than a self-serving litigation tactic to which no party would agree.  (Opp'n ¶ 56.)

### 2.    The Copyright Claimants Did Not Voluntarily Submit to the Bankruptcy Court's Jurisdiction

The Copyright Claimants filed the Administrative Claims under compulsion of the Administrative Claims Bar Date in Article II.A of the Plan, while making clear they were not consenting to the jurisdiction of the Bankruptcy Court.  [*E.g.*, ECF No. 3-4, Summary of Claim at 10.]  Had the Copyright Claimants not filed those claims, they would have been discharged:

> Except as otherwise provided in this Article II.A, . . . unless previously Filed, **requests for payment of Administrative Claims** . . . **must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date**.  **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date . . . .**

[*In re Frontier Commc'ns Corp.*, ECF No. 1005-1, Plan Art. II.A (emphasis added).]

The Debtors' Effective Date Notice contains substantially the same language:

> Entities must File (a) Proofs of Claim for payment of an Administrative Claim as set forth in Article II.A of the Plan . . . .  **All Proofs of Claim required to be Filed by the Plan that are Filed after the date that they are required to be Filed pursuant to the Plan shall be disallowed and forever barred, estopped, and enjoined from assertion and shall not be enforceable against any Reorganized Debtor . . . .**
>
> **HOLDERS OF ALL PROOFS OF CLAIM REQUIRED TO BE FILED BY THE PLAN THAT ARE FILED AFTER THE DATE THAT THEY ARE REQUIRED TO BE FILED PURSUANT TO THE PLAN SHALL BE DISALLOWED AND FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTION AND SHALL NOT BE ENFORCEABLE AGAINST ANY REORGANIZED DEBTOR . . . .**

[*In re Frontier Commc'ns Corp.*, ECF No. 1793, at 2 (emphasis in original).]

Frontier now makes the frivolous and bad faith argument that the Administrative Claims Bar Date, in fact, barred nothing and that the Administrative Claims would have remained unimpaired had the Copyright Claimants let the Administrative Claims Bar Date pass.  (Opp'n ¶¶ 25, 51.)  Not surprisingly, Frontier fails to address (1) the plain language of the Plan and Effective Date Notice and (2) how the Administrative Claims would have been unimpaired if the Copyright Claimants had not filed them.[2]

Finally, the filing of the Universal Pre-Petition Claim should be accorded little weight. (*Id.* ¶¶ 25–27.)  Whether that filing constitutes consent to the Bankruptcy Court's jurisdiction is no justification for creating the fractured proceedings that Frontier seeks, especially where the Plan provides for claim adjudication outside of the Bankruptcy Court.

### 3.   The Bankruptcy Court Is Not the Best Forum to Adjudicate the Copyright Claims

Despite clear language in the Plan and Effective Date Notice requiring Administrative Claims to be filed by June 1, 2021, Frontier now argues that the Copyright Claimants could have waited until the automatic stay was lifted to commence a single action against Frontier in a district court covering all three claim periods.  (*Id.* ¶ 51.)  As discussed in more detail above, the Plan provides otherwise.  However, Frontier's misguided argument underscores why the Bankruptcy Court does not need to determine whether damages for copyright infringement are "actual and necessary costs" of preserving the Debtors' estate.  (*Id.* ¶¶ 4, 25, 54.)

---

[2] Make no mistake, had the Copyright Claimants filed a plenary action in this Court, Frontier would have argued that those claims had to be brought in the Bankruptcy Court, and, if the Administrative Claims Bar Date had passed, that those claims were discharged under the Plan.

Frontier touts the general ability of bankruptcy courts to conduct summary, streamlined proceedings, but maintaining the Copyright Claims in the Bankruptcy Court would require a significant modification of typical bankruptcy procedures and schedules in order to address the complex legal and factual issues surrounding the Copyright Claims.  (*Id.* ¶¶ 52–55.)  Indeed, Frontier has reversed course on its own submissions to the Bankruptcy Court.

Frontier's suggestion that full discovery under the Federal Rules of Civil Procedure will be available to the Copyright Claimants in the Bankruptcy Court is disingenuous at best. (*Id.* ¶ 54.)  Frontier does not (and cannot) dispute that, based upon litigation of similar copyright cases, discovery will likely take between nine months and two years.  (Mem. at 18.)  And yet Frontier proposed a schedule in the Bankruptcy Court that would: (1) allow only five months for all fact and expert discovery; (2) not allow time for summary judgment motions; (3) provide just ten days to prepare for trial; and (4) limit pre-trial briefing on complex copyright issues to 15 pages (whereas Frontier's objection to the Universal Pre-Petition Claim was 18 pages). Moreover, the Debtors' proposed discovery plan would have arbitrarily limited document requests, requests for admission, and Rule 30(b)(6) deposition topics each to five, and eliminated interrogatories altogether.  [*In re Frontier Commc'ns. Corp.*, ECF No. 1842, at 15.]  At the June 15, 2021 status conference, Judge Drain recognized that the discovery identified by the Copyright Claimants likely would be needed to resolve these issues (a point that Frontier does not dispute), that discovery would be "lengthy" and "expensive," and that Frontier's proposed schedule was "probably too accelerated."  (Oppenheim Supp. Decl., Ex. 9, 18:7–10, 25:12.)

Further, the Bankruptcy Court's regularly scheduled omnibus hearings will not speed up or streamline the adjudication of the Copyright Claims.  (Opp'n ¶ 55.)  Resolution of the Copyright Claims will require a multi-day or -week trial.  In an analogous case against high-

speed internet service provider Cox Communications, Inc. in the United States District Court for the Eastern District of Virginia—a district known as the "rocket docket"—the trial was 12 days.

In the meantime, while this Motion is pending, Judge Drain strongly urged the parties to mediate the claims.  (Oppenheim Supp. Decl., Ex. 9, 17:24–20:24.)  The Copyright Claimants repeatedly asked Frontier to mediate before they filed this Motion, but Frontier refused.  (*Id.* at 18:24–19:9.)  Even now, despite Judge Drain's strong desire for the parties to mediate before engaging in full-blown litigation, Frontier has said it will not consider mediation unless the Copyright Claimants agree to drop their monetary claims.  (Oppenheim Supp. Decl. ¶ 8.)  Frontier's demand that the Copyright Claimants forego their rights to participate in mediation is inappropriate.

### B.    <u>Adjudicating the Copyright Claims Is Not Core to This Bankruptcy</u>

While claims adjudication may be a core matter in an ordinary bankruptcy case, this is not an ordinary case.[3]  Frontier's bankruptcy is a case where pre-petition claims are unimpaired and all creditors will be paid in full, and the Plan expressly provides that claimants may litigate their claims in courts other than the Bankruptcy Court.  (Mem. at 4–5, 14; Opp'n ¶ 7.)

The resolution of the Copyright Claimants' claims will have no effect whatsoever on the Debtors' bankruptcy cases or their estates.  All property of the Debtors' estates revested in the reorganized Debtors on the Effective Date of the Plan, and under the Plan, the Debtors may litigate, compromise, or settle claims "without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules."  (*In re Frontier Commc'ns. Corp.*, ECF No. 1005, Confirmation Order ¶ 40; Plan Art. IV.L.)

---

[3] Judge Drain's observation at the June 15, 2021 status conference—without a pending motion before him—that he "think[s]" this is "a core matter" is not dispositive.  (Opp'n ¶ 23.)

Finally, Frontier's contention that adjudication of the Copyright Claims is core to the Debtors' bankruptcy cases rings especially hollow given Frontier's position that the Copyright Claimants could have filed a single action in this Court covering all claims.  (Opp'n ¶¶ 25, 51.) Adjudication of the Copyright Claims will not affect the administration of the Debtors' Chapter 11 cases, and any preference for the adjudication of claims by the Bankruptcy Court in the ordinary case has little relevance to the unique facts of this case.

### C.   The Copyright Claimants Are Not Engaged in Forum Shopping

Frontier contends that the Copyright Claimants are improperly using the Bankruptcy Court only when it "suits their purposes," but Frontier does not identify those purposes. (Opp'n ¶ 60.)  The Copyright Claimants never filed a Bankruptcy Rule 2004 motion, and Frontier's suggestion that mere contemplation of such a motion by the Universal Pre-Petition Claimants (two of the 26 Copyright Claimants) can confer jurisdiction or implies forum shopping should be rejected.[4]  (*Id.* ¶¶ 43, 59.)

The Copyright Claimants could not have filed an Administrative Claim before the Effective Date of the Plan on April 30, 2021 because the Copyright Claimants did not know the period that would be covered.  The Copyright Claimants timely filed their Administrative Claims on June 1, 2021 and filed the Motion a mere eight days later.  While the Plan appears to state otherwise, if Frontier's interpretation of the Administrative Claims Bar Date is correct, and the Copyright Claimants could have waited to file one consolidated action in the District Court, it is hard to see how the Copyright Claimants could be forum shopping by seeking to have all of their claims resolved in a forum where Frontier contends all claims could have been brought.

---

[4] Notably, the Debtors refused to share any of the very limited informal discovery produced by the Debtors with the Sony Claimants and the Warner Claimants until the Sony Claimants and the Warner Claimants filed claims.  (Oppenheim Supp. Decl. ¶ 10, Ex. 11.)

(Opp'n ¶ 51.)  The reality is that the Copyright Claimants commenced multiple actions because: (1) Frontier's Plan required that the Copyright Claimants file Proofs of Claims for their Administrative Claims; (2) Frontier failed to produce the documents it had agreed to produce (Oppenheim Supp. Decl. ¶¶ 8–9); (3) Frontier refused to engage in meaningful mediation (*id.* ¶ 6); and (4) Frontier failed to address rampant copyright infringement by its subscribers— infringement that appears to persist to this day.

Nothing about the Universal Pre-Petition Claimants' request for a one-day extension to file a response to the Universal Claim Objection suggests forum shopping.  (Opp'n ¶¶ 17–18, 59.)  The Copyright Claimants reasonably requested additional time to allow recently-retained counsel to get up to speed and because Frontier waited several days to respond to the Copyright Claimants' mediation request, which Frontier ultimately rejected.

### D.    Frontier Does Not Address the Copyright Claimants' Right to a Jury Trial

As the Copyright Claimants explained in their opening brief, the Copyright Claimants reserved the right to request a jury trial, and they are unquestionably entitled to one in the District Court Action.  (Mem. at 22–23.)  Frontier does not respond to this argument, let alone attempt to refute it.  Accordingly, this factor favors withdrawal of the reference.

### E.    Frontier's Remaining Arguments Are Without Merit

Frontier argues that granting the Copyright Claimants' Motion "would . . . subvert a central goal of the Bankruptcy Code—to provide a single forum to dispose of the affairs of a bankrupt debtor."  (Opp'n ¶ 61.)  However, this case is not a threat to jurisdiction that does not exist, or, if jurisdiction does exist, that should not be exercised because the *Orion* Factors favor streamlined, efficient litigation in the District Court.  To the extent a central goal of the Bankruptcy Code is to have all claims adjudicated in a single forum, Frontier already subverted

that goal by confirming a plan that leaves claims unimpaired and allows for their adjudication outside of the Bankruptcy Court.  (Mem. at 4–5, 14; Opp'n ¶ 7.)

Frontier's cases are inapposite as they address untimely motions to withdraw and different procedural concerns.  *See Lone Star Indus. v. Rankin Cnty. Econ. Dev. Dist.* (*In re N.Y. Trap Rock Corp.*), 158 B.R. 574, 577 (S.D.N.Y. 1993) (denying withdrawal where movant filed motion nearly two weeks after an adverse ruling); *In re Pruitt*, 910 F.2d 1160, 1168–69 (3d Cir. 1990) (reversing withdrawal order where an appeal was pending, the district court failed to find that "cause" existed, and withdrawal would have allowed the debtor to make arguments it failed to make in the bankruptcy court).  Here, there have been no adverse decisions.  There is also no evidence of forum shopping.  Withdrawing the reference now, before any discovery has taken place, will not result in the Copyright Claimants receiving a second bite at the apple.

## III.     THE MOTION IS TIMELY

The filing of the Motion was unquestionably timely.  The Copyright Claimants moved to withdraw the reference 23 days after the Debtors filed the Universal Claim Objection on the same day that a response was due, eight days after the Copyright Claimants filed the Administrative Claims, six days before the initial status conference on the Universal Claim Objection, and nearly two months before the deadline for objecting to the Administrative Claims.

Frontier's suggestion that the Universal Pre-Petition Claimants could have filed the Motion prior to May 17, 2021 is wrong as a matter of law.  (Opp'n ¶¶ 13 & n.3, 64.)  A proof of claim is prima facie valid until an objection is filed.  Fed. R. Bankr. P. 3001(f).  Until the Debtors filed the Universal Claim Objection, there was no "proceeding" as to which the reference could be withdrawn.  *See* 28 U.S.C. § 157(d) (allowing withdrawal of the reference with respect to a "case or proceeding").  And even if there were a proceeding, seeking withdrawal would not have made any sense when those parties were exploring an out-of-court

-14-

resolution of the Universal Pre-Petition Claim.  The other 24 Copyright Claimants did not even

file their claims until June 1, 2021, and no objections have been filed.

The cases cited by Frontier do not require a different result as they involved entirely

different circumstances.  (*See* Opp'n ¶¶ 62–63 (citing *In re Joe's Friendly Serv. & Son Inc.*, No.

17-MC-0190(JS), 2019 U.S. Dist. LEXIS 204355, at *17 (E.D.N.Y. Nov. 25, 2019) (finding

motion untimely when filed one month after adverse ruling); *In re N.Y. Trap Rock Corp.*,

158 B.R. at 577 (finding three months unreasonable where bankruptcy court issued adverse

rulings); *Davis v. Mahlmann*, No. 92 C 322, 1993 U.S. Dist. LEXIS 98, at *11 (N.D. Ill. Jan. 7,

1993) (finding motion untimely when filed a month after the party seeking withdrawal filed a

non-dischargeability complaint, the legal arguments were known for years, and the debtor had

filed a motion to dismiss).)  The timing of the Copyright Claimants' Motion was reasonable

given the circumstances here.  There have been no adverse findings, Frontier has not identified

any prejudice from the timing of the Motion, and the pleading that provided actual notice (and

commenced a proceeding) was the Universal Claim Objection filed on May 17, 2021.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should enter an order granting the Copyright

Claimants' motion to withdraw the reference and such other and further relief as it deems just

and proper.

Dated: White Plains, New York      LUSKIN, STERN & EISLER LLP
     July 1, 2021

     By:  /s/ Michael Luskin
OPPENHEIM + ZEBRAK, LLP      Michael Luskin
Matthew J. Oppenheim      Stephan E. Hornung
Lucy Grace D. Noyola (admitted *pro hac vice*)
4350 Wisconsin Avenue, NW, Fifth Floor
Washington, DC 20016      50 Main Street
(202) 480-2999      White Plains, New York 10606
     (212) 597-8200